EASTERN DIST.
*May*, 1837.

ORSO *vs.* ORSO.

ORSO
*vs.*
ORSO.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Prescription, which has begun to run against the ancestor's claim, will be suspended at his death, and until his minor heir at law arrives at the age of majority.

Interruption of prescription by minority will be noticed in the Supreme Court, when it has not been pleaded in the court below, if it appears from the face of the proceedings.

According to the provisions of the Spanish law, the surviving mother was not the natural tutrix of the minor children. The father had the right to appoint a curator, *ad litis*, to the minors, and to name a tutor in his will.

As the law was, before the adoption of the Civil Code of 1808, *lands* only were considered as literally bearing fruits : So, the *price* of lands and houses alone, bears legal interest without agreement or judicial demand.

This suit was instituted by Zenon Orso, only child and heir at law of his father Z. Orso, deceased, to recover the sum of two thousand and thirty-six dollars from the defendant, who was his father's mother. The facts of this case are in all other respects similar to those in the case of Desirée Orso Xanpi *vs.* Louise C. Orso, *vide ante*, 57. The defendant's plea is a general denial ; prescription was pleaded in the Supreme Court. The material facts on which this case turns, are not controverted, and are also fully stated in the opinion of the court. Judgment was rendered for the sum of five thousand and ninety dollars, including *interest*. The defendant appealed.

*Gray*, for the plaintiff.

*J. Seghers*, for the defendant, contended that this *debt* is prescribed by the lapse of ten years after the plaintiff arrived at the age of majority.

2. He insisted that the claim for interest was prescribed by the lapse of *four* years after majority.

EASTERN DIST.
*May*, 1837.

ORSO
*vs.*
ORSO.

3. Legal interest ceases to run, when it amounts to, or becomes equal to the capital; the judgment, therefore, in this case is for too large a sum, being more than is prayed for.

*Bullard, J.*, delivered the opinion of the court.

The only difference between this case and that of Xanpi *vs.* Orso, *just decided, ante* 57, is that in this, it is the heir at law of one of the defendant's children, who claims the portion due his father, Zenon Orso. The father was born October 7th, 1786, and consequently was of age in 1807, and his portion of the estate of his father then fell due; if he were yet alive, this action would be barred by prescription; but it appears that he died in 1813, and the present plaintiff is admitted by the pleadings, to be his only child and heir at law. He must have been at that time a minor, for admitting what is extremely improbable, that the father married as soon as he had a legal capacity, to wit: at fourteen years of age, and that the plaintiff was born within the first year of the marriage, he would have been but six years of age at his father's death, and prescription would not run against him until his age of majority, in 1822, and he being absent from the state, a sufficient time had not elapsed previously to the commencement of this suit to operate prescription.

Prescription, which has begun to run against the ancestor's claim, will be suspended at his death, and until his minor heir at law arrives at the age of majority.

We have doubted whether we are at liberty to notice this interruption of the prescription by minority, which is not set up by the pleadings; but, upon reflection, we consider ourselves bound to do so, from the following considerations: In the first place, if the exception had been filed in the court below, no replication could have been admitted, setting up minority on the part of the plaintiff, and consequently, he might have availed himself of all means either in law or in fact to repel the plea. Secondly, prescription can be pleaded in the Supreme Court, only when the proof of it appears on the face of the proceedings in the lower court. *Code of Practice*, 902. It is true, the party to whom the plea is opposed is authorized to ask that the case may be remanded for trial on that plea; but in this case he has not thought proper to do so, and as it does not appear to us on the face of

Interruption of prescription by minority will be noticed in the Supreme Court, when it has not been pleaded in the court below, if it appears from the face of the proceedings.

the proceedings, that prescription had been acquired, while

it is shown that the plaintiff was a minor during several years, we cannot sustain the plea without violating the rule. *Contra non valentem agere non currit praescriptio.*

This brings us to the merits of the case ; it is shown that the plaintiff's ancestor was entitled to receive two thousand and thirty-six dollars seven and one half reals, which was due on his attaining the age of majority, and the District Court gave judgment for that sum, together with legal interest from the time the debt fell due. The only doubt is in relation to the right of the plaintiff to recover interest.

In the absence of any stipulation to that effect, the right of the plaintiff to recover interest must depend upon some provision of law, and it must result either from some relation in which the parties stood towards each other, or from the nature of the debt itself. That the defendant never was the tutrix of the children, appears to us manifest. Orso, the father, died before the promulgation of the Civil Code of 1808, and we are satisfied, that by the Spanish law, the surviving mother was not the natural tutrix. In this case the widow never was recognized as tutrix. A curator, *ad litis*, of the minors, was appointed by the testament of the father, who had a right to name a tutor ; the tutorship did not devolve on the mother by operation of law. *Berluchaux* vs. *Berluchaux,* 7 *Louisiana Reports,* 539.

According to the provisions of the Spanish law, the surviving mother was not the natural tutrix of the minor children. The father had the right to appoint a curator *ad litis* to the minors, and to name a tutor in his will.

But it is contended by the plaintiff's counsel, that the debt in question being the price of property yielding fruits, the defendant is bound to pay interest from the time it became due. The Spanish law on this point is thus expressed by the author of the *Curia Phillipica:* "El comprador de la cosa fructifera que lleva los frutos en recompensa de ellos debe pagar àl rendedor el interes del precio se." *Cur. Ph. verbo intereses, No.* 24. In the case now before the court, the whole property in the inventory, consisting of a house and lot, a few slaves, some movables, and nearly half in bonds or promissory notes, due to the deceased, and a small sum in ready money, all of which was held in community, was adjudicated to the surviving widow on her agreeing to account

ORSO *vs.* ORSO.

to the children for their shares of one half, to which they were entitled as heirs of their father. The contract was in effect a partition and liquidation of the estate preceded by collation of what some of the heirs had received in advance, and amounted certainly to an alienation; the house and lot was estimated at ten thousand dollars, and the slaves at about three thousand. It was decided at an early period by this court, that the price of lands and houses alone bear interest without any agreement to that effect, and without the necessity for a judicial demand. 3 *Martin*, 374, *Ibid.* 92. It is useless to inquire how far the law has been changed on this point.

EASTERN DIST. *May,* 1837.

As the law was, before the adoption of the Civil Code of 1808, *lands* only were considered as literally bearing fruits: So, the *price* of lands and houses alone, bears legal interest without agreement or judicial demand.

One half of the price of the house and lot belonged to the children, and the ancestor of the present plaintiff was entitled to one eighth of that half, to wit: six hundred and twenty-five dollars, upon which we think him entitled to claim interest at five per cent. from the time it was due.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed; and proceeding to render such judgment as we think ought to have been given below, it is further adjudged, that the plaintiff recover from the defendant, two thousand and thirty-six dollars and ninety-three and three fourths cents, with interest on six hundred and twenty-five dollars thereof, at five per cent. from the 7th of October, 1807, until paid, and costs of the District Court; those of the appeal to be paid by the plaintiff and appellee.